UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 08-10312-RWZ


UNITED STATES

v.

ALEX RODRIGUEZ


<u>ORDER</u>

December 18, 2009

ZOBEL, D.J.

A state criminal complaint was filed and an arrest warrant issued against defendant arising out of an alleged armed robbery. During the subsequent arrest and search of defendant and his home, police discovered a firearm, drugs, and counterfeit currency, which led to the federal criminal charges and brought him before this court. Defendant now moves for a <u>Franks</u> hearing to challenge the application upon which his state criminal complaint and arrest warrant were issued, and suppression of the evidence found as a result of his arrest. <u>See generally</u> <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

**I.      The Application for a Criminal Complaint and Arrest Warrant**

Detective Gregory Sirois of the New Bedford Police Department signed and submitted the application for a criminal complaint and arrest warrant (the "Application"), which set forth the factual basis for a probable cause determination. At the time he filed the Application he had personally interviewed the alleged victims, Josue Morales and

Freddie Valentin, the defendant, and a security guard, Cheryl Jackson, who had personal knowledge of some of the facts.

In relevant part, Sirois stated that Morales and Valentin were outside their apartment when they were approached by two Spanish-speaking men wearing black ski masks. One of the men raised a revolver and demanded keys to the apartment. Neither Morales nor Valentin had keys. One of the masked men then went to the apartment window and attempted to enter, and Morales and Valentin were able to flee. Both then headed back to the apartment, Morales grabbed his keys and left on his motorcycle, while Valentin stayed to change clothes. When Valentin shortly thereafter left the apartment he encountered the same masked men, who ordered him to drop his keys, which he did.

That evening, Morales and Valentin returned to the apartment and found it ransacked. Morales saw a person he knew as "Alex" (the defendant Alex Rodriguez) leave the apartment and noticed he was wearing the same clothes as one of the masked men. Alex told the apartment complex security guard, Cheryl Jackson, that he was helping a friend in Puerto Rico move. Morales then confronted Alex, who dropped the keys to the apartment and fled.

Later, Valentin was approached by Alex who asked him to tell the security guard a cover story for Alex's presence in the apartment. Valentin also recognized Alex's clothing as that worn by one of the masked men.

Finally, the victims' property was visible inside a vehicle that belonged to Alex.

## II.    Discussion

2

Defendant is entitled to a <u>Franks</u> hearing only if he makes a substantial preliminary showing that (1) the affidavit included a false statement or material omission made knowingly, intentionally, or with reckless disregard for the truth; and (2) the false statement or material omission altered the determination of probable cause.[1]  <u>United States v. Reiner</u>, 500 F.3d 10, 14 (1st Cir. 2007).  Defendant must point to specific portions of the affidavit, and provide supporting reasons supplemented with affidavits or otherwise reliable statements of witnesses.  <u>Franks</u>, 438 U.S. at 171.

Defendant asserts that the Application omitted material information which would alter the determination of probable cause.  Specifically, the Application omitted (1) that Morales already knew defendant; (2) Morales spoke with Jackson immediately after the alleged armed robbery attempt, but didn't mention the robbery; (3) Jackson didn't see the masked robbers; (4) police responded twice that evening; (5) Jackson did not tell police about the key-dropping incident until several days after it occurred; (6) Valentin was observed walking with defendant after the key dropping incident;  (7) Morales has a criminal history; (8) Valentin was homeless and staying with Morales; and (9) defendant and his girlfriend explained why Morales and Valentin's property was in defendant's vehicle.

Defendant's argument that these omissions undermine the probable cause

_____

[1]If there was a false statement, the false statement must have been necessary to the finding of probable cause; if there was a material omission, the inclusion of the omitted fact must negate probable cause.  <u>See</u> <u>United States v. Castillo</u>, 287 F.3d 21, 25 n.4 (1st Cir. 2002).

determination lacks merit.  As discussed below, several of the omissions corroborate the allegations, others are irrelevant, and only one has any contrary significance.  None contradict the core facts in the Application, that defendant was seen leaving Morales' and Valentin's apartment, that he had keys to the apartment allegedly stolen from Valentin, that he gave the security guard a false explanation for his presence, and that Morales' and Valentin's property was found in his car.

First, the Application does disclose that Morales knew defendant.  The Application refers to defendant as "a party [Morales] knows as Alex."

Second, the inference from Morales' conversation with Jackson following the attempted armed robbery is, at most, mixed, and does not undermine the probable cause determination.  He asked her to let him back into his apartment, which corroborates his statement that he did not have his keys, while his failure to disclose the robbery undermines his allegations, to the extent any inference can be drawn given his explanation that he was scared and his demonstrated intent to immediately leave the area.

Third, no weight can be given to the fact that Jackson did not see the masked robbers.  It is unclear whether Jackson would have observed the area where the robbery occurred, at the time it occurred.

Fourth, the fact that police responded to an anonymous call early in the evening, and did not observe an armed robbery in progress, has no impact on the probable cause determination.  There is no allegation that the armed robbery was in progress when this earlier police visit occurred.

4

Fifth, Jackson did, in fact, disclose the key-dropping incident to Officer Gonsalves shortly after it occurred. Defendant's argument that the incident Jackson related to Officer Gonsalves on the day of the crime is a different incident relies on an unreasonable reading of his report. All three police reports, and the Application, align as to the timing, individuals involved (other than Valentin, who is present in Gonsalves' report), and dropping of keys, so it is clear all address the same incident.[2]

Sixth, Officer Gonsalves' observation of Valentin and defendant walking together around 9:00 pm corroborates Valentin's account, as Valentin said that defendant approached him that evening to request that Valentin provide defendant with a cover story for the armed robbery.

Seventh, Morales' prior criminal conviction is not material. It did not involve defendant, and there are no allegations of fraud or perjury. To the extent any criminal conviction would diminish his credibility, Morales' statements in the case are corroborated by several other witnesses.

Eighth, the fact that Valentin was living with Morales is disclosed in the Application, which refers to the apartment as "their apartment."

---

[2]Absolutely no significance can be ascribed to the use of the word "altercation" in Officer Gonsalves' report rather than "confrontation" as in the other first-responding officer's report (and to Morales' and Valentin's similar confusion as to the appropriate terminology). An on-duty police officer has limited time in which to explore the fine semantic distinction between two words as similar as confrontation and altercation, especially when paraphrasing a witness' statement at the scene, rather than recording information from personal knowledge. There are similar problems with defendant's attempt to distinguish "defendant threw the keys" in one report from "keys had been dropped" in the other. Detective Sirois also had the benefit of interviews during his investigation so he could clarify any ambiguity in the responding officers' reports.

Finally, ninth, defendant and his girlfriend's explanation that they were helping Valentin and Morales move bolsters the probable cause determination, because defendant gave a contradictory explanation to Jackson that he was helping a friend in Puerto Rico move.

## III.    Conclusion

Defendant's motion to suppress (Docket # 24) is DENIED.  The government's motion for an extension of time (Docket # 27) is ALLOWED.  Defendant's motion for leave to file a response (Docket # 29) is ALLOWED.  The government's motion for leave to file a reply (Docket #31) is ALLOWED.


        December 18, 2009                             /s/Rya W. Zobel
             DATE                                  RYA W. ZOBEL
                                          UNITED STATES DISTRICT JUDGE